UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MCCONNELL, # 656895,

       Petitioner,

v.                              CASE NO. 2:10-CV-14341
                                    HONORABLE VICTORIA A. ROBERTS

MILLICENT WARREN,

       Respondent.

_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.**    **Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Angela Renee McConnell ("Petitioner") alleges that she is being held in state custody in violation of her rights. Petitioner was convicted of three counts of first-degree felony murder, MICH. COMP. LAWS § 750.316(b), first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and perjury as to a prosecutor's investigative subpoena, MICH. COMP. LAWS § 767A.9(1)(b), following a jury trial in Kalamazoo County Circuit Court. She was sentenced to life imprisonment without the possibility of parole on each of the felony murder convictions, 7 to 20 years imprisonment on the home invasion conviction, and 4 to 20 years imprisonment on the perjury conviction in 2008.

In her pleadings, Petitioner raises claims concerning the admission of evidence pertaining to her withdrawn guilty plea, the conduct of the prosecutor, the effectiveness of trial counsel, and the jury instructions. For the reasons set forth, the Court denies habeas relief. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.**     **Facts and Procedural History**

      Petitioner's convictions arise from the beating and stabbing deaths of three people, a couple in their 90's (Mr. and Mrs. Polderman) and their 62-year-old daughter (Anna Lewis), during a home invasion in Kalamazoo County on August 31, 2000.

      Petitioner was 17 years old at the time of the crime. The case remained an uncharged, cold case murder until 2007 when Petitioner's codefendant, Brandy Miller, made statements to the police indicating that she had knowledge of the crime. Trial Tr. vol. III, p. 397. In February of 2007, Petitioner also admitted to police that she had knowledge of the crime, even though she had previously denied such knowledge when she testified at an investigative subpoena hearing. *Id*. at 535-36, 459-62. In March of 2007, Brandy Miller fully confessed to her involvement in the crime. *Id*. at 397. Petitioner was subsequently arrested for a probation violation. *Id*. at 537. While in custody, Petitioner spoke to detectives and made a full confession of her involvement in the crime. *Id*. at 489-92. Petitioner was then arrested and charged. *Id*. at 462.

      Petitioner initially pleaded guilty to reduced charges of three counts of second-degree murder, one count of home invasion, and one count of perjury as to a prosecutor's investigative subpoena in exchange for her cooperation with investigators, testimony against her codefendants, and a sentence agreement of 35 to 52½ years in prison.

      After tendering her plea, Petitioner began to fulfill the requirements of her plea agreement by providing another statement to police, Trial Tr. vol. III, pp. 468, 509-10; testifying at two codefendants' preliminary examinations, *Id*. at 468-69; and testifying at another unspecified proceeding involving a codefendant. *Id*. at 474. Petitioner then changed attorneys and opted to withdraw her guilty plea and proceed to trial. Tr. Ct. Dkt. pp. 2-3.

Petitioner gave more than a dozen statements regarding her involvement in the crime, including her trial testimony. Due to the nature of Petitioner's habeas claims, it is helpful to catalog her statements. Those statements include:

(1) Detective Richard Mattison first talked to Petitioner in May, 2002. She denied any involvement in the crime. Trial Tr. vol. III, p. 477.

(2) Detective Mattison talked to Petitioner several times over the next four years. *Id*. at 478. Petitioner was generally cooperative and voluntarily gave a DNA sample. *Id*. at 535. Petitioner denied involvement in the murders. *Id*. at 478. She also said that Brandy Miller had called her and was upset. *Id*.

(3) Petitioner testified at an investigative subpoena hearing where she denied any involvement in the murders. Trial Tr. v. III, pp. 459-62.

(4) In February of 2007, Petitioner went to visit her brother in jail. She was not allowed to see him because she smelled of alcohol. Officers asked her to go "down to the city" and speak to Detective Bill Sparrow. *Id*. at 535-36. During this two-hour long interview, she admitted knowing that her codefendants were involved in the murders. *Id*. at 548. After the meeting, the police brought her brother to meet with her for a contact visit. *Id*. at 536.

(5) On March 5, 2007, Petitioner was arrested on a probation violation. *Id*. at 488, 539. On March 21, 2007, while in custody, she was advised of her rights and spoke with Captain James Patrick Mallery and Detective Sparrow. *Id*. at 488. Captain Mallery transcribed her statement. *Id*. at 489. She reviewed the statement and signed it. *Id*. at 490. This 17-page document was admitted without objection and read to the jury. *Id*. at 492-508. Petitioner admitted that she was present for the planning stages of the crime, that she witnessed her

3

codefendants placing weapons in their vehicle, that she and Brandy Miller gained entrance to the house by pretending that they had car trouble, that her male codefendants then entered the house to steal money, that the male codefendants struck Mr. Polderman on the head with a baseball bat when he tried to get them to leave, that she tried to prevent Mrs. Polderman from going downstairs, that she and Brandy Miller tried to prevent the Poldermans' daughter, Anna Lewis, from entering the house, and that her male codefendants told her that they had beaten the victims and slit their throats. *Id*. Petitioner was arrested soon after making this statement.

(6) Petitioner decided that she wanted to make a statement to Detective Mattison on March 28, 2007, after she had been arraigned and had spoken to her husband. *Id*. at 464. She sent a "kite" to Detective Mattison. *Id*. at 464-65. The next day, Petitioner, her husband, and Detective Mattison met for an interview. *Id*. at 464-65. A DVD of this interview was admitted into evidence without objection. *Id*. at 466.

(7) Witness Emily Ledbetter testified against Petitioner at trial. Trial Tr. vol. III, pp. 442. Ledbetter testified that in March and April of 2007, Petitioner spoke about her involvement in the murders while they were both confined in the county jail. *Id*. at 442-48. Ledbetter recalled that Petitioner had taken money from the home to buy drugs and other details about the crime. *Id*.

(8) Captain Mallery interviewed Petitioner after her guilty plea. *Id*. at 468, 509-10. Petitioner's attorney was present for this interview. *Id*. at 510. A DVD of the interview was admitted into evidence without objection. *Id*. In the interview, Petitioner admitted striking victim Anna Lewis with a pipe. *Id*. at 515.

(9) Petitioner testified at the joint preliminary examination of codefendants Andrew

4

Miller and Jerome Williams with her attorney present. *Id*. at 468-69. A portion of this testimony was admitted into evidence without objection. *Id*. at 469.

(10) Petitioner testified at codefendant Benjamin Platt's preliminary examination. *Id*. at 473. A portion of that testimony was admitted into evidence without objection. *Id*. at 473-74.

(11) Petitioner also testified at another unspecified hearing involving codefendant Benjamin Platt in December of 2007. *Id*. at 474.

(12) The last statement given by Petitioner was her testimony at her own trial in October, 2008. *Id*. at 533-66. She denied being involved in the crime.

At trial, Brandy Miller testified that both she and Petitioner participated in the plan to steal money from the Poldermans. Trial Tr. vol. II, p. 365. She and Petitioner told Mrs. Polderman that their car broke down as a ruse to get into the house. *Id*. at 370. The three male codefendants entered the house afterward. They were all present when the murders occurred. *Id*. at 372-85. Miller testified that she and Petitioner prevented Mrs. Polderman from going to the basement to assist her husband while he was being beaten, that Petitioner struck Anna Lewis, *id*. at 380, that they tried to cover up evidence, *id*. at 385-86, and that they agreed to try to frame Miller's ex-boyfriend who did not participate in the murders. *Id*. at 387-88.

Eunice McElvaine, Benjamin Platt's friend, testified that Platt came to her house in April of 2001 because he needed a place to stay and had been drinking. He told her that the police were looking for him on a murder case, so he wanted to cut his hair and flee the area. Platt told McElvain that he and Joe did it using a baseball bat. The next day, when Platt was sober, he told her that he and Joe did the Polderman murders. McElvain contacted the police after Platt left her house. On cross-examination, McElvain said that Platt did not mention Petitioner.

5

Nathan McDaniel, who was confined in the same county jail cell block as Andrew Miller in June and July of 2007, testified that Andrew Miller told him that he was ashamed of what he had done, that he had helped kill some people during a robbery, and that he had beaten and stabbed the victims. Andrew Miller told him that his sister (Brandy Miller), Jerome, and Petitioner were with him. McDaniel reported this information to the police in the hope of securing a deal in his own criminal case, but he did not receive any consideration for his testimony. On cross-examination, McDaniel acknowledged that he knew Mark Black, the father of one of Brandy Miller's children, and that Black was a codefendant in his case.

Emily Ledbetter, Petitioner's cellmate at the county jail, testified that Petitioner told her that she was involved in the crime with Brandy Miller, as well as men named Ben, Andy, and Joe. Trial Tr. vol. III, pp. 442. Petitioner told Ledbetter that she held Mrs. Polderman upstairs and that a bat, a pipe, and a knife were weapons used in the crime. *Id*. at 443. Mr. Polderman had the bat at first, but the male codefendants took it from him and used it against him. They then took Mr. Polderman to the basement to get money from a safe or a lock box. *Id*. Petitioner was upset that the police found the pipe used in crime. *Id*. at 444. Petitioner also told her that Andy slit Mr. Polderman's throat and they went to Meijer's to purchase cleaning supplies. *Id*. at 445. Ledbetter said that she reported Petitioner's statements to the authorities because it was the right thing to do. She did not receive anything in exchange for her testimony. *Id*. at 447.

Several police officers testified at trial. Detective Mattison, a member of a multi-jurisdictional team that investigates cold case homicides, testified that he first questioned Petitioner pursuant to an investigative subpoena and she denied any knowledge of the crime. Trial Tr. vol. III, pp. 453-54, 461. After Petitioner was arrested and charged, Detective Mattison

6

spoke with Petitioner's husband, Shannon Branch, who indicated that Petitioner wanted to speak with Detective Mattison and tell the whole story. Petitioner sent Detective Mattison a kite indicating that she wanted to talk to him. Detective Mattison met with Petitioner and her husband. A record of that interview was admitted at trial with no objection. *Id*. at 463-66.

Detective Mattison also testified that he was present for the August 24, 2007 joint preliminary examination of codefendants Andrew Miller and Jerome Williams, where Petitioner testified pursuant to her plea agreement, *id*. at 468-69, as well as the September 12, 2007 preliminary examination of codefendant Benjamin Platt. *Id*. at 473-74. Excerpts of Petitioner's testimony from both proceedings were admitted into evidence without objection.

Captain Mallery testified that he interviewed Petitioner on March 20, 2007, while she was in custody for a probation violation. *Id*. at 488. During that interview, Petitioner detailed sequence of events on the day of the murders and Captain Mallery took a handwritten account of her statement. *Id*. at 489. Petitioner reviewed the statement and initialed each page indicating that it was accurate. *Id.* Petitioner's statement was admitted into evidence without objection. *Id*. at 492. In the statement, Petitioner told Captain Mallery that she and her codefendants planned on breaking into the Poldermans' house because they were aware of a large amount of cash inside the house. *Id*. at 493. She said that her codefendants put a bat, a wrench, a screwdriver, and a pipe in the truck that they drove to the house. *Id*. at 494. The plan was for she and Brandy Miller to go to the door, claim they had car trouble, and ask to use the phone. *Id.* at 495. The others would then come in to get the money. *Id.*

After they had all entered the house, Mr. Polderman came into the room and tried to push Benjamin Platt outside, but Platt hit him on the head with a baseball bat. *Id*. at 496. The three

male co-defendants then took Mr. Polderman into the basement, and it sounded like Mr. Polderman was being hit.  Petitioner and Brandy Miller tried to keep Mrs. Polderman upstairs by locking arms, but she broke through, lost her balance, and fell down the stairs.  They heard a car door, and the Poldermans' daughter, Anna Lewis, came to the door.  *Id*. at 497-98.  Petitioner and Brandy Miller tried to keep her from entering the house, but were unsuccessful.  *Id*. at 497. Andrew Miller grabbed Lewis and took her downstairs.  *Id*. at 498.  Petitioner and Brandy Miller went outside to move vehicles.  *Id*.  The male codefendants eventually exited the house and they all left the premises.  *Id*.

Petitioner testified on her own behalf at trial.  She claimed that she was telling the truth during the 2006 investigative subpoena and testified that she had no knowledge of the homicides. Petitioner explained that the reason that she told the police that Joe, Ben and Andrew committed the crime was because she wanted the police to leave her alone.  She testified that she declined an initial plea offer because she did not commit the crime.  She took the subsequent plea offer because her mother and her former attorney convinced her to do so, and she was scared that she would never see her children again.  *Id*. at 542.

Several times during trial, both the prosecutor and defense counsel referred to Petitioner's withdrawn guilty plea.  The prosecutor first referenced Petitioner's guilty plea during opening statements.  Trial Tr. vol. II, p. 246.  He explained that Petitioner and Brandy Miller had accepted plea bargains and agreed to testify truthfully against their codefendants, but then Petitioner decided to recant her testimony and withdraw her plea.  *Id*. at 246-47.  Defense counsel did not reference Petitioner's plea during opening statements.  *Id*. at 248-50.

The prosecutor referred to Petitioner's withdrawn guilty plea while eliciting testimony

8

from Captain Mallery and Detective Mattison, Trial Tr. vol. III, pp. 467, 509, and asked Petitioner about the plea while cross-examining her.  *Id.* at 557.  The prosecutor also referred to the withdrawn plea during closing arguments, but did not argue that Petitioner was guilty because she had previously plead guilty.  Trial Tr. vol. IV, p. 585.  Rather, he argued that it made more sense to believe that her statements made pursuant to the plea agreement were truthful and that her recanting statements were not truthful.  *Id.*  He also argued that the plea agreement would not be an incentive for Petitioner to falsely admit personal involvement in the crime because it called for a lengthy sentence.  *Id*. at 585-86.

Defense counsel referred to Petitioner's withdrawn guilty plea while cross-examining Captain Mallery and Detective Mattison.  Trial Tr. vol. III, pp. 480, 516.  Defense counsel also asked Petitioner why she pled guilty while questioning her on direct examination. *Id*. at 542.  During closing arguments, defense counsel claimed that Petitioner felt trapped after she made a false statement incriminating herself, and that she took the plea because she was told that she would never see her children again.  Trial Tr. vol. IV, p. 591.

Both parties referenced statements that Petitioner made pursuant to her plea agreement.  Trial Tr. vol. III, pp. 467, 509, 516, 542.  Those statements were admitted into evidence without objection.  *Id*. at 469-70, 474, 510-11, 515.  The defense theory at trial was that Petitioner was pressured into taking the plea and that the police told her what to say in her statements.  *Id*. at 542-43.

At the close of trial, the jury found Petitioner guilty as charged on all counts.  The trial court subsequently sentenced her to the terms of imprisonment previously set forth.

Following her convictions and sentencing, Petitioner filed an appeal of right with the

Michigan Court of Appeals raising claims concerning the admission of evidence pertaining to her withdrawn guilty plea, the conduct of the prosecutor, the effectiveness of trial counsel, and the jury instructions. The court denied relief on those claims and affirmed her convictions. *People v. McConnell*, No. 289463, 2010 WL 481022 (Mich. Ct. App. Feb. 11, 2010) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. McConnell*, 486 Mich. 1048, 783 N.W.2d 373 (2010).

Petitioner thereafter filed her federal habeas petition raising the following claims:

I.      She received ineffective assistance of counsel where counsel (1) failed to move for suppression of Petitioner's incriminating statements and confession; (2) failed to challenge the voluntariness of the statements and confession; (3) failed to object to admission of evidence pertaining to Petitioner's prior guilty plea, plea agreement, and plea negotiations when the plea was later withdrawn; and (4) failed to object to pervasive prosecutor misconduct.

II.     Her rights to a fair trial and due process of law were violated due to pervasive reference to her withdrawn guilty plea, plea agreement, and plea negotiations. Michigan Rule of Evidence 410 does not permit introduction into evidence of statements made during and after her plea once the plea has been withdrawn.

III.    The prosecutor committed misconduct in making pervasive references to inadmissible evidence pertaining to the withdrawn plea, thus violating her right to a fair trial.

IV.     The trial court committed reversible error in failing to give a jury instruction on second-degree murder.

Respondent filed an answer to the petition contending that the claims are barred by procedural default and/or lack merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state

prisoners.  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule
that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of
facts that are materially indistinguishable from a decision of [the Supreme] Court and
nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S.
12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see
also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to
'grant the writ if the state court identifies the correct governing legal principle from [the
Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."
*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*,
535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of
[Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than
incorrect or erroneous.  The state court's application must have been 'objectively
unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at

11

409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *Williams*, 529 U.S. at 412;  *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal

law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, Respondent asserts that Petitioner's second and third habeas claims, concerning the admissibility of evidence pertaining to her withdrawn guilty plea and the conduct of the prosecutor, are barred by procedural default because Petitioner failed to object to those

matters at trial and the Michigan Court of Appeals ruled that the claims were unpreserved and only reviewed them for plain error.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on these claims. In denying relief, the court relied upon the failure to object at trial. *McConnell*, 2010 WL 481022 at *1, 3. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural

default rules.  *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied relief on these claims based upon a procedural default – the failure to properly object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default.  *Amadeo v. Zant*, 486 U.S. 214, 223 (1988).  Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available.  *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffective assistance of trial counsel as cause to excuse the procedural default.  Petitioner, however, cannot establish that counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), or that she suffered actual prejudice, as these claims lack merit and do not warrant relief.  *See* discussion *infra*.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation

15

probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner makes no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### B.      Evidentiary Claim

Petitioner asserts that she is entitled to habeas relief because the trial court erred in admitting evidence of her withdrawn guilty plea and her plea-related statements. She alleges a violation of Michigan Rule of Evidence 410 and her due process rights.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred under the Michigan Rules of Evidence, she merely alleges a state law violation which does not entitle her

16

to federal habeas relief.  *See, e.g., Beach v. Moore*, 343 F. App'x 7, 11 (6th Cir. 2009) (ruling

that nothing in the text of Federal Rule of Evidence 410 or its Ohio counterpart refers to a

constitutional right); *Dozier v. Booker*, No. 08-14991, 2013 WL 184000, *6 (E.D. Mich. Jan. 17,

2013) (denying habeas relief on claim alleging a violation of Michigan Rule of Evidence 410).

State courts are the final arbiters of state law and the federal courts will not intervene in such

matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74,

76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner also claims a violation of her due process rights.  In reviewing this issue for

plain error, the Michigan Court of Appeals ruled that the admission of evidence concerning

Petitioner's withdrawn guilty plea violated the plain language of Michigan Rule of Evidence

410, but that the admission of Petitioner's post-plea interview with police did not violate that

rule.  The court went on to conclude that reversal was not required because Petitioner had not

shown that the admission of the evidence unfairly prejudiced her due process right to a fair trial.

The court explained in relevant part:

> After reviewing the record, we acknowledge that defendant's withdrawn guilty
> plea was referenced numerous times during the proceedings. However, the
> references were not such as to render the trial unfair. A review of the record
> reveals that both parties elicited information about the withdrawn plea for their
> own purposes and that these references were overshadowed by the significant
> inculpatory evidence presented at trial that was unrelated to the guilty plea. This
> evidence included testimony from a codefendant that established defendant was
> present at the time of the murders and participated by hitting one of the victims
> with a pipe. This testimony was supported by defendant's former cellmate's
> testimony that defendant admitted to her involvement in these crimes and another
> codefendent's admission to his cellmate that defendant was involved in the
> murders. Further, defendant made two statements to police in March of 2007,
> another inculpatory statement in July of 2007, and testified on three occasions
> against her codefendants about her involvement in the home invasion and
> murders. In light of this overwhelming evidence, defendant has failed to establish
> the evidence regarding her withdrawn guilty plea was unfairly prejudic[ial].

17

*McConnell*, 2010 WL 481022 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The evidence and references to Petitioner's withdrawn guilty plea did not render Petitioner's trial fundamentally unfair given the defense's own use of that information, as well as the significant evidence of Petitioner's guilt properly admitted at trial. That evidence includes Petitioner's own inculpatory statements to police, Petitioner's testimony at her male codefendants' preliminary examinations, codefendant Brandy Miller's testimony detailing Petitioner's involvement in the crime, Petitioner's admissions to cellmate Emily Ledbetter, and codefendant Benjamin Bratt's statements to fellow inmate Nathan McDaniel implicating Petitioner in the crime.

In other words, any error in admitting evidence pertaining to Petitioner's withdrawn guilty plea and plea negotiations was harmless. For purposes of habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). Such is the case here. The properly admitted evidence of Petitioner's guilt was overwhelming. Habeas relief is not warranted on this claim.

### C.   Prosecutorial Misconduct Claim

Petitioner relatedly asserts that she is entitled to habeas relief because the prosecutor engaged in misconduct by eliciting testimony about her withdrawn guilty plea and then

referencing the withdrawn plea during trial.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals reviewed this claim for plain error and denied relief. The court found that even if the prosecutor engaged in misconduct, Petitioner was not entitled to reversal because she failed to establish that she was prejudiced or denied a fair trial given the defense arguments regarding the withdrawn guilty plea and the overwhelming evidence of her guilt. *McConnell*, 2010 WL 481022 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, while the prosecutor violated Michigan Rule of Evidence 410 by eliciting testimony and referencing Petitioner's withdrawn guilty plea, the prosecutor did not err in introducing Petitioner's inculpatory police statements or the testimony she gave at her codefendants' preliminary examinations. Second, the prosecutor did not argue that the jury should find Petitioner guilty because she had previously pled guilty (to lesser murder charges). Rather, in response to Petitioner's defense at trial, the prosecutor argued that the jury should believe Petitioner's inculpatory statements, including those which were properly

19

admitted at trial, instead of her recanting testimony.  Third, accepting that the prosecutor erred, such misconduct did not render Petitioner's trial fundamentally unfair given the defense references to the withdrawn guilty plea and the overwhelming evidence of Petitioner's guilt presented at trial.  Any error by the prosecutor was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht, supra*. Habeas relief is not warranted on this claim.

### D.      Ineffective Assistance of Trial Counsel Claims

Petitioner asserts that she is entitled to habeas relief because trial counsel was ineffective for failing to object to the admission of evidence pertaining to her withdrawn guilty plea, for failing object to the claimed prosecutorial misconduct, and for failing to seek suppression of her incriminating statements and challenge the voluntariness of those statements.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny

20

of counsel's performance is highly deferential.  *Id*. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id*. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding.  *Id*.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770 at 788 (2010) (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.

Petitioner asserts that trial counsel was ineffective for failing to object to the admission of evidence pertaining to her withdrawn guilty plea and for failing to object to the alleged instances of prosecutorial misconduct as to that plea.  Citing *Strickland*, the Michigan Court of Appeals

21

ruled that Petitioner failed to establish that trial counsel was ineffective as to such matters and

denied relief.  The court explained:

> Defendant also complains that she was denied the effective assistance of counsel because defense counsel failed to object to evidence regarding her withdrawn guilty plea and because defense counsel failed to object to the prosecutor's references to defendant's withdrawn guilty plea. "This Court neither substitutes its judgment for that of counsel regarding matters of trial strategy, nor makes an assessment of counsel's competence with the benefit of hindsight.' *People v. Matuszak*, 263 Mich. App. 42, 58, 687 N.W.2d 342 (2004). At trial, defense counsel argued that defendant pled guilty and testified against her codefendants at three different criminal proceedings because she was scared and harassed by police. Considering defendant's numerous inculpatory statements to police, the inculpatory testimony at her codefendant's criminal proceedings, and the testimony of others at trial that implicated defendant, it was a reasonable trial strategy to introduce evidence of defendant's withdrawn guilty plea to explain why defendant previously testified on three occasions regarding her involvement in the murders and then to present the defense that defendant was influenced, coerced, and badgered into making the inculpatory statements. In light of that trial strategy, defense counsel's failure to object to the prosecutor's references to the withdrawn guilty plea was reasonable. Defendant has failed to overcome the strong presumption that defense counsel's failure to object to the introduction of this evidence was ...[sic] sound trial strategy. *Matuszak*, 263 Mich. App. at 58, 687 N.W.2d 342 ("The defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy.").

*McConnell*, 2010 WL 481022 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  Given Petitioner's inculpatory police

statements and her testimony at her codefendants' preliminary examinations, as well as the other

evidence of her guilt presented at trial, it was reasonable for trial counsel to introduce (and not

object to) evidence of Petitioner's withdrawn guilty plea in order to argue that she was coerced

and coached into confessing to the crime and making the inculpatory statements.  Counsel's

strategy was reasonable under the unique circumstances of this case.  The fact that counsel's

strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss v.*

*Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Furthermore, Petitioner cannot demonstrate that she was prejudiced by counsel's conduct given the significant evidence of guilt presented at trial.  Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard.  More importantly, for purposes of federal habeas review, Petitioner fails to show that the state court's ruling to that effect was unreasonable.

Petitioner also asserts that trial counsel was ineffective for failing to seek suppression of her police statements and challenge the voluntariness of those statements.  The Michigan Court of Appeals refused to address the merits of this claim because Petitioner "failed to identify in the record which of the numerous statements she was challenging" and thus "failed to establish a factual predicate for her claim."  *McConnell*, 2010 WL 481022 at *2.  Because the state court did not rule on the merits of the claim, the Court will review the claim *de novo*.  *See Coley v. Bagley*, 706 F.3d 741, 749 (6th Cir. 2013) (ruling that the AEDPA's deferential standard of review "does not apply to claims that the state court resolved without deciding the federal constitutional issues, as when the claims were held procedurally barred.  Instead, if the federal court reaches their merits, they are reviewed under pre-AEDPA law.  Under that standard, we review mixed questions of law and fact *de novo*") (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (ineffective assistance of counsel claim is a mixed question of law and fact).

In order to establish that trial counsel was ineffective under the *Strickland* standard, Petitioner must demonstrate that counsel erred in failing to seek suppression and challenge the

23

voluntariness of her police statements and that she was prejudiced by counsel's conduct. To satisfy the prejudice prong in this context, Petitioner must show that "had the motion been filed there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different had the evidence been suppressed." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994); *see also Evans v. Booker*, 461 F. App'x 441, 443 (6th Cir. 2012) (citing *McCalvin v. Yukins*, 444 F.3d 713, 722 (6th Cir. 2006)).

Petitioner fails to establish that counsel erred and/or that she was prejudiced by counsel's conduct. First, counsel may have reasonably decided not to challenge the voluntariness of Petitioner's police statements before trial as part of a larger strategy to explain and contest all of Petitioner's incriminating statements by arguing that her initial statements to police were the product of harassment and coercion and her later statements arose from her need to continue cooperating with the authorities. Under such circumstances, counsel's decision to challenge the voluntariness of Petitioner's police statements during trial rather than in a pre-trial motion was a reasonable strategy that defeats Petitioner's claim.

Second, counsel may have reasonably decided not to seek suppression of Petitioner's police statements because such a motion would have been futile. The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

24

In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police coercion (a "crucial element"), (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition, and (8) whether the suspect was advised of her or her *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors should be closely scrutinized, *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961), but without coercive police activity, a confession should not be deemed involuntary. *See Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a statement was involuntary rests with the petitioner. *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

In this case, Petitioner fails to specifically challenge any of her police statements and fails to establish that any of those statements were involuntary. She offers no evidence to show that she was not advised of her rights and/or did not voluntarily waive those rights, that she was coerced, or that any of the surrounding circumstances rendered her police statements involuntary. Conclusory allegations without evidentiary support do not provide a basis for habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a sufficient basis for an evidentiary hearing

in habeas proceedings).

Petitioner's assertion that she felt harassed because the police questioned her and her acquaintances at various times over the years during their ongoing, cold case investigation is insufficient to establish that she was coerced at the time she made her statements.  Petitioner's claim that she was afraid she would not be able to see her child/children also does not rise to the level of police coercion.  *Cf. Lynum v. Illinois*, 372 U.S. 528, 534 (1963) (confession coerced where police told suspect that her children would be taken from her and denied state financial aid if she did not cooperate).  Any claim that her family or prior counsel urged her to cooperate with the authorities also does not establish police coercion.  *See, e.g., Connelly*, 479 U.S. at 165-66 (stating that there must be coercive action by the State to establish a due process violation warranting the suppression of a confession).  Additionally, Petitioner's own trial testimony belies her claim that she was mistreated or coerced by the police such that her statements should have been suppressed.  *See, e.g.,* Trial Tr. vol. III, p. 553-54.

Moreover, the record indicates that Petitioner was 23 years old when she made her incriminating police statements in 2007, was married with a child/children, was familiar with the criminal justice system, was advised of her rights, signed her March 21, 2007 statement, and initiated her March 29, 2007 interview.  There is also no evidence that Petitioner was physically or mentally impaired (though she smelled of alcohol at the time of her February, 2007 statement), was deprived of any necessities, or was questioned for an excessive period of time.  Given such circumstances, it cannot be said that Petitioner's police statements were involuntary.  Consequently, any motion to suppress those statements would have been denied.  Trial counsel cannot be deemed deficient for failing to make a futile or meritless motion.  *United States v.*

26

*Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).  Furthermore, because any suppression motion

would have been denied, Petitioner cannot establish that she was prejudiced by counsel's

decision not to file such a motion.  Petitioner fails to establish that trial counsel was ineffective

under the *Strickland* standard.  Habeas relief is therefore not warranted on these claims.

      **E.**        **<u>Jury Instruction Claim</u>**

      Petitioner asserts that she is entitled to habeas relief because the trial court denied

defense counsel's request for an instruction on second-degree murder as a lesser offense of the

charged offense of first-degree felony murder.

      In order for habeas relief to be warranted on the basis of incorrect jury instructions, a

petitioner must show more than that the instructions are undesirable, erroneous or universally

condemned.  Rather, taken as a whole, they must be so infirm that they rendered the entire trial

fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The failure to give an

instruction that is supported by the evidence does not automatically entitle a petitioner to habeas

relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair.  *Cupp*

*v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007).  A

failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a

whole adequately present the defense theory to the jury.  *Duckett v. Godinez*, 67 F.3d 734, 743

(9th Cir. 1995).  "An omission, or an incomplete instruction, is less likely to be prejudicial than

a misstatement of the law."  *Henderson*, 431 U.S. at 155.  State law instructional errors rarely

form the basis for federal habeas relief.  *Estelle*, 502 U.S. at 71-72.

      The Michigan Court of Appeals denied relief on this claim finding that the second-degree

murder instruction was not warranted under state law because the element separating first-degree

27

felony murder from second-degree murder, the commission of the home invasion, was

undisputed.  The court explained that because Petitioner claimed that she was not involved in the

home invasion or the murders, she was either guilty of both crimes or not guilty at all.  Under

such circumstances, state law did not require an instruction on second-degree murder as a lesser

offense of felony murder.  *McConnell*, 2010 WL 481022 at *4 (citing *People v. Cornell*, 466

Mich. 335, 357, n. 13, 646 N.W.2d 127 (2002)).

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  The Supreme Court has declined to

determine whether due process requires jury instructions on lesser included offenses in

non-capital cases.  *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980).  In *Hopper v. Evans*, 456

U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser

included offense instruction only when there is evidence to support it.  The Supreme Court has

since held that state courts are not constitutionally required to instruct capital case juries on

crimes which are not lesser included offenses of the charged crime.  *Hopkins v. Reeves*, 524 U.S.

88, 90-91 (1998).  The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not

require a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d

531, 541 (6th Cir.2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir.1990) (en

banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d

704, 717 (E.D. Mich. 2003).  The United States Court of Appeals for the Sixth Circuit has held

that first-degree murder is a non-capital offense in Michigan.  *Scott*, 302 F.3d at 606; *see also*

*Tegeler v. Renico*, 253 F. App'x 521, 524-25 (6th Cir. 2007) (due process did not require jury

instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated

murder case where petitioner received a non-parolable life sentence). Consequently, a second-degree murder instruction was not constitutionally required. Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Moreover, even if Petitioner states a cognizable claim, she is not entitled to relief. The record indicates that the trial court accurately instructed the jury about the elements of the charged offenses, the burden of proof, and other relevant matters. The second-degree murder instruction was not required under state law, or as a matter of due process, because Petitioner's defense at trial was that she did not participate in the crime at all, not that she did not commit a home invasion or that a home invasion did not occur. Petitioner fails to establish that the jury instructions, taken as a whole, rendered her trial fundamentally unfair. Habeas relief is not warranted on this claim.

## V.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on her claims and that her petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Slack*, 528 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to her habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling.  A certificate of appealability is not warranted.  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

 S/Victoria A. Roberts                          
Victoria A. Roberts
United States District Judge

Dated:  February 28, 2014

30

The undersigned certifies that a copy of this document was served on the attorneys of record and Angela McConnell by electronic means or U.S. Mail on February 28, 2014.

s/Carol A. Pinegar
Deputy Clerk